IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| GARTH W. BROWN, | § | Case No. 06-40467 |
| | § | (Chapter 7) |
| Debtor. | § | |
| | § | **EOD** |
| CHRISTOPHER J. MOSER, CHAPTER 7 TRUSTEE, | § | 01/08/2007 |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adv. No. 06-4184 |
| | § | |
| NATIONAL REINER'S BREEDER'S CUP aka N.R.B.C. | § | |
| | § | |
| Defendant. | § | |

## **MEMORANDUM OPINION**[1]

This matter is before the Court on a motion for summary judgment by the defendant, NRBC. The defendant seeks judgment on each of the claims set forth in the adversary complaint filed by the plaintiff, Christopher J. Moser, as trustee for the Chapter 7 estate of the debtor. Specifically, the defendant seeks a summary judgment denying the trustee's claims for a preferential transfer under §547 of the Bankruptcy Code and for a fraudulent transfer under §548 of the Bankruptcy Code and the Texas Uniform Fraudulent Transfer Act ("TUFTA").

### **I. Summary Judgment Standard**

Motions for summary judgment are authorized by Federal Rule of Civil Procedure

---

[1] This Memorandum Opinion is not designated for publication and shall not be considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, or the law of the case, or as to other evidentiary doctrines applicable to the specific parties in this proceeding.

1

56 and Federal Rule of Bankruptcy Procedure 7056. The entry of a summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56(c)). If a summary judgment motion is properly supported, a party opposing the motion may not rest upon the contents of its pleadings, but must demonstrate the existence of specific facts constituting a genuine issue of material fact for which a trial is necessary. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49 (1986) (citing FED. R. CIV. P. 56(e)).

The party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion, identifying those portions of the "pleadings, depositions, answers to interrogatories, and affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The manner in which this showing can be made depends upon which party will bear the burden of persuasion at trial. If the burden of persuasion is on the moving party, "that party must support its motion with credible evidence--using any of the materials specified in Rule 56(c)--that would entitle it to a directed verdict if not controverted at trial." *Celotex*, 477 U.S. at 331. If the burden of persuasion is on the non-moving party, the party moving for summary judgment may satisfy the burden of production under Rule 56 by either submitting affirmative evidence that negates an essential element of the non-moving party's claim, or by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim. *Celotex*,

2

477 U.S. at 331; *Lavespere v. Niagra Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990).

In this case, the parties have essentially stipulated in their briefs that there is no factual dispute in need of resolution. The parties have presented opposing motions for summary judgment based upon application of appropriate law. For cases in which the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate. *Mansker v. TMG Life Ins. Co.,* 54 F.3d 1322, 1326 (8th Cir. 1995); *Thompson Everett, Inc. v. National Cable Advertising, L.P.,* 57 F.3d 1317, 1323 (4th Cir. 1995) ("A federal court may resolve the legal questions between the parties as a matter of law and enter judgment accordingly.").

## II. Uncontested Facts and Procedural History

The affidavits and admissible evidence submitted by the parties in connection with the defendant's motion for summary judgment establish the following relevant, uncontested facts:

1. The defendant – whose proper name is the National Reining Breeder's Classic – is an event approved by the National Reining Horse Association.

2. Only members of the National Reining Horse Association may participate in the National Reining Breeder's Classic.

3. The debtor, Garth Brown, was a member of the National Reining Horse Association during the relevant time. He bought, sold and trained reining horses, doing business as Brown Performance Horses.

4. Vittorio Rabboni was also a member of the National Reining Horse Association during the relevant time. Mr. Rabboni is a resident of Italy. He owns and shows horses in the United States.

5. Mr. Rabboni owns a horse named Playboy Master. He enrolled Playboy Master in the National Reining Breeder's Classic, which was to be held on April 18-23, 2006. NRBC's total fees were $11,800 for the enrollment of Playboy Master.

6. In March 2006, Mr. Rabboni contacted the debtor and arranged for the debtor to act as an intermediary in paying NRBC's fees.

7. On March 17, 2006, Mr. Rabboni wired $17,965 to the debtor's account with First State Bank. The debtor used this bank account for both personal and business expenses.

8. The debtor and Mr. Rabboni agreed and understood that the funds transferred by Mr. Rabboni were to be used solely to pay the NRBC's fees for Playboy Master, to purchase a colt, and to pay a commission to another person related to the purchase of a colt.

9. On March 18, 2006, the debtor wrote Check No. 540 in the amount of $11,800 to the defendant.

10. The debtor did not enroll a horse in the 2006 National Reining Breeder's Classic and (except for the challenged transaction) did no business with the defendant in the year prior to bankruptcy.

11. The defendant cashed Check No. 540, and the funds were transferred from the debtor's bank account on April 4, 2006.

12. The debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code on April 7, 2006.

13. On October 3, 2006, the Court heard a motion by the defendant to dismiss this adversary case. The Court denied the motion. The Court instructed the parties that they had until December 7, 2006 to file any supplemental briefing or affidavits relating to the defendant's alternative motion for summary judgment.

14. On December 7, 2006, the trustee filed an "Alternate Response for Motion for Summary Judgment against National Reiner's Breeder's Cup" (the "Alternate Response"). In his Alternate Response, the trustee admits that the defendant was not a creditor of the debtor and is not a creditor of the debtor's estate. The trustee states that the sole issue remaining for the Court to decide is whether the debtor's transfer of $11,800 to the defendant was a transfer of interest of the debtor in property that may be avoided as a fraudulent transfer pursuant to §548 of the Bankruptcy Code.

### III. Legal Discussion

Based on the foregoing, the Court makes the following conclusions:

1. A proceeding to recover a preferential or fraudulent conveyance raises a core matter over which this Court has jurisdiction to enter a final order. 28 U.S.C. §§157(b)(2)(F) and (H) and 28 U.S.C. §1334.

2. As an initial matter, the trustee's evidence is insufficient to establish his claim for a preferential transfer under §547(b) of the Bankruptcy Code. The parties agree that the defendant was not a creditor of the debtor. The uncontested facts also establish that the $11,800 payment the trustee seeks to avoid was not made on account of an antecedent debt owed by the debtor to the defendant. Thus, to the extent the trustee has

5

not abandoned his preference claim, the defendant's request for summary judgment will be granted on this issue.

3. The trustee's evidence is also insufficient to establish a claim for avoidance based on actual fraud under the Bankruptcy Code or TUFTA. *See* 11 U.S.C. §548(a)(1)(A); TEX. BUS. & COM. CODE §24.005(a)(1). The uncontested facts establish that, as a matter of law, the debtor did not intend to hinder, delay or defraud his creditors with respect to the $11,800 payment to the defendant. Thus, to the extent the trustee has not abandoned his claim for actual fraud, the defendant's request for summary judgment will be granted on this issue as well.

4. With respect to the trustee's claim for a constructively fraudulent transfer, both §548 of the Bankruptcy Code and TUFTA require (as a threshold matter) proof that the transfer involved a property interest of the debtor. *See* 11 U.S.C. §548(a); TEX. BUS. & COM. CODE §24.002(2) (defining "asset" as "property of the debtor"). In order to establish such an interest, the trustee must show that the debtor exerted control over funds transferred out of his account in order to demonstrate a property interest in the funds the trustee seeks to recover for the bankruptcy estate. *See, e.g., In re Dayton Title Agency, Inc.,* 262 B.R. 719 (S.D. Ohio 2001) (discussing "control" under the avoidance provisions of the Bankruptcy Code); *Newsome v. Charter Bank Colonial*, 940 S.W.2d 157 (Tex. App. - Houston [14 Dist.] 1996) (discussing "control" under TUFTA). "Control" over transferred funds means the legal right of debtor to use funds. *In re Schick*, 234 B.R. 337, 343 (Bankr. S.D. N.Y. 1999). "Control" does not mean debtor's ability to steal funds, or use funds for his own personal purposes in breach of a duty. *Id.*

6

5.  Here, the defendant argues that the debtor acted as a Mr. Rabboni's bailee The defendant asserts that the debtor, as bailee, had no control over the $11,800, but, instead, had a duty to use the funds to pay NRBC's entry fees for Mr. Rabboni's horse. Thus, the defendant asserts that the trustee cannot establish the elements of a fraudulent transfer claim and that summary judgment should be granted in its favor. In response, the trustee argues that the funds should be treated as the debtor's property since they were co-mingled with other funds in the debtor's account.

6.  Under Texas law, "[t]he basic elements of a bailment are: (1) the delivery of personal property by one person to another in trust for a specific purpose; (2) acceptance of such delivery; (3) an express or implied contract that the trust will be carried out; and (4) an understanding that the property will be returned to the transferor or dealt with as the transferor directs." *Sisters of Charity of the Incarnate Word, Houston v. Meaux*, 122 S.W.3d 428, 431 (Tex. App. – Beaumont 2003).

7.  "A bailment contract may arise by implication of law if through the proof of sufficient circumstances the implied relationship of bailor and bailee is shown to rest upon substantive foundation." *Soto v. Sea-Road Int'l., Inc.*, 942 S.W.2d 67, 72 (Tex. App. – Corpus Christi 1997) (citations omitted). "Formal communication and negotiation [are] not necessary." *Id.*

8.  Cash may be the subject of a bailment under Texas law. *See In re Johnson*, 150 S.W.3d 267, 274 (Tex. App. – Beaumont 2004) (cash left with relator for safekeeping); *See Tellez v. Tellez,* 531 S.W.2d 368, 369 (Tex. Civ. App.-El Paso, 1975, no writ) (cash left with mother); *Bloom v. Bloom,* 767 S.W.2d 463, 469 (Tex. App.-San

Antonio 1989, writ den.) (cash and personal property left with defendants for safekeeping).

9. Although a bailee has possession of bailed property, legal and equitable title remain in the bailor. The bailee does not have authority to dispose of the property contrary to the terms of the bailment. *City Nat. Bank of Eastland v. Conley*, 228 S.W. 972, 974 (Tex. Civ. App. – Fort Worth 1921). "The mere possession of property of another does not give the possessor the right to deal with such property as he sees fit." *Trinity Finance Corp. v. Price*, 192 S.W.2d 464, 466 (Tex. Civ. App. – Waco 1946). "[A] delivery [by a bailee] to an unauthorized person is as much a conversion as would be a sale of the property, or an appropriation of it to the bailee's own use." *McDonald v. Leonard Bros.*, 134 S.W.2d 460, 463 (Tex. Civ. App. – Fort Worth 1939).

10. For example, under Texas law, when money is deposited in a bank without any special agreement, it is mingled with the other funds of the bank. *Martin v. First State Bank of Memphis,* 490 S.W.2d 208, 211 (Tex. Civ. App. - Amarillo 1973, no writ). The relationship of debtor and creditor is created between the bank and the depositor, and the deposit is recognized as a *general* deposit. *Id.* In contrast, a deposit made for some special application or disposition is a *special* deposit. *Id.* A special deposit, or one made for a specific purpose differs from a general deposit in that title to the special deposit does not pass to the bank, and the relationship created by the deposit is that of bailor and bailee, rather than that of creditor and debtor. *Id. See also Hudnall v. Tyler Bank and Trust Co.,* 458 S.W.2d at 183, 186 (Tex. 1970).

11. A bailment is not technically a trust under Texas law. *See* 8A TEX. JUR. 3d *Bailments* § 18. Although a delivery of cash or personal property may be made in

8

trust or as a subject of bailment, the concepts are distinct.  Among other things, in a trust, title passes to the person to whom delivery is made, while in a bailment, no title passes.  *National Cattle Loan Co. v. Ward*, 113 Tex. 312 (Tex. 1923); *Forson v. State*, 282 S.W.2d 385 (Tex. 1955).

12. In this case, the uncontested facts establish a bailment agreement between Mr. Rabboni and the debtor.  In contrast to *In re Southmark Corp.,* 49 F.3d 1111 (5th Cir. 1995) – the only case cited by the trustee in his Alternate Response to the defendant's request for summary judgment – the debtor in this case did not have unfettered discretion to use the $11,800 transferred by Mr. Rabboni to pay his own creditors.  The debtor had a duty, as bailee, to use the funds to pay NRBC.  Accordingly, the transfer did not involve a property interest of the debtor.

13. Even assuming that the debtor had an interest in the $11,800, the debtor received reasonably equivalent value in exchange for the payment to the defendant.  By transferring the $11,800 to the defendant, the debtor satisfied his obligation to pay the enrollment fees charged by NRBC for Mr. Rabonni's horse with the funds transferred to him by Mr. Rabboni.

### IV. Conclusion

Under the specific, uncontested facts of this case, the trustee cannot establish a claim for a preferential or fraudulent transfer.  The Court concludes that, as a matter of law, (1) the defendant is not a creditor of the debtor who received a payment on account of an antecedent debt, (2) the funds used to make the disputed payment were not property of the debtor, (3) the debtor did not actually intend to hinder, delay or defraud his creditors by paying the defendant, and (4) the debtor received reasonably equivalent

value in exchange for the payment to the defendant. For all the foregoing reasons, the defendant's request for summary judgment is granted.

The trustee shall take nothing by his complaint, and the parties shall bear their own costs and attorneys' fees. A separate judgment will be entered consistent with this Memorandum Opinion.

Signed on 1/8/2007

*Brenda T. Rhoades*   MD
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE